**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **CITGO PETROLEUM CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 4:14-cv--02905** |
| **DAIBES OIL, LLC and** | § | |
| **FRED A. DAIBES,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

Plaintiff, CITGO Petroleum Corporation, files this Original Complaint against Defendants Fred A. Daibes and Daibes Oil, LLC (collectively "Defendants"), and would show the court as follows:

### I.    PARTIES

1.    Plaintiff CITGO Petroleum Corporation ("CITGO") is a Delaware corporation with its principal place of business in Houston, Texas.

2.    Defendant Daibes Oil, LLC ("Daibes Oil"), is a foreign limited liability company formed under the laws of New Jersey with a principal place of business at 1000 Portside Drive, Edgewater, New Jersey 07020. As set forth more fully below, Daibes Oil executed a Marketer Franchise Agreement with CITGO which requires performance in Texas, at least in part.  Daibes Oil therefore engages in business in this state.  Daibes Oil does not, however, maintain a place of business nor does it have a registered agent for service of process in the State of Texas. CITGO will attempt to obtain a waiver of service from Daibes Oil as provided under Federal Rule of

1

Civil Procedure 4(d). If CITGO cannot obtain a waiver from Daibes Oil, then CITGO will serve Daibes Oil in accordance with Federal Rule of Civil Procedure 4(h). Upon information and belief, the members of Daibes Oil are Fred A. Daibes and Munir Daibes.

3.       Defendant Fred A. Daibes ("Daibes") is a nonresident of Texas, whose home office is located at 1000 Portside Drive, Edgewater, New Jersey 07020.  As set forth more fully below, Daibes executed a guaranty agreement with CITGO in which he guaranteed the financial obligations of Daibes Oil, a limited liability company in which he is reportedly a member.  This guaranty agreement requires performance in Texas, at least in part.  Daibes therefore engages in business in this state.  Daibes does not, however, maintain a place of business in Texas nor does he have a registered agent for service of process in this state. Similarly, CITGO will attempt to obtain a waiver of service from Daibes as provided under Federal Rule of Civil Procedure 4(d). If CITGO cannot obtain a waiver from Daibes, then CITGO will serve Daibes in accordance with Federal Rule of Civil Procedure 4(e).

## II.       JURISDICTION AND VENUE

4.       This Court has subject matter jurisdiction over this action pursuant to Section 39 of the Lanham Trademark Act (the "Lanham Act"), 15 U.S.C. § 1121. *See* 28 U.S.C. §§ 1331, 1338(a) and (b). Additionally, jurisdiction is also proper because CITGO and Defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000. 28 U.S.C. §1332.

5.       Daibes Oil is subject to personal jurisdiction in Texas because the claims in this case arise out of its contacts with Texas. Those contacts include the performance of certain contracts in Texas.  One of the principal contracts at issue in this matter, the Marketer Franchise Agreement between CITGO and Daibes Oil, was negotiated, executed, and requires performance

2

in Texas, at least in part.  The claims asserted by CITGO against Daibes Oil arise from its obligations under this agreement and thus relate to or arise from Daibes Oil's activities in Texas. Moreover, in that agreement, CITGO and Daibes Oil agreed to submit to the jurisdiction of the United States District Court for the Southern District of Texas, which the parties agreed would serve as the "exclusive venue for any proceeding relating to or arising out of this Agreement." *See* Marketer Franchise Agreement § 20(a). Accordingly, Daibes Oil is subject to specific jurisdiction in Texas for claims relating to or arising out of the Marketer Franchise Agreement.

6.      Daibes is also subject to personal jurisdiction in Texas because the claims in this case arise out of his contacts with Texas. His contacts also include the performance of certain contracts in Texas.  Another one of the principal contracts at issue in this matter, the Guaranty Agreement between CITGO and Daibes, was negotiated and required performance in Texas, at least in part.  The claims asserted by CITGO against Daibes arise from Daibes' obligations under this agreement and thus relate to or arise from Daibes' activities in Texas. Accordingly, Daibes has specific contacts in Texas relating to the claims asserted herein and is subject to specific jurisdiction in Texas.

7.      Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in the Southern District of Texas. In addition, certain acts, omissions, statements, and representations of the Defendants, which form the basis of the claims asserted herein, were committed within this judicial district.  Furthermore, the parties contractually agreed to govern any disputes arising from their contractual agreements under Texas law, and Daibes Oil and CITGO agreed that the exclusive venue for any proceeding arising out of or relating to the Marketer Franchise

\\DE - 032041/000115 - 741652 v2

Agreement would be the United States District Court for the Southern District of Texas.  As such, this matter is properly before this Court.

8.      All conditions precedent to the filing of this cause of action have been satisfied.

### III.    FACTS

9.      This lawsuit arises out of Daibes Oil's sale of non-branded gasoline from service stations displaying CITGO's logos, trademarks, and protected images; Daibes Oil's failure to fulfill its payment obligations to CITGO under the parties' Marketer Franchise Agreement; and Mr. Fred Daibes' refusal to fulfill his payment obligations to CITGO as guarantor of Daibes Oil's indebtedness under the Guaranty Agreement between Daibes and CITGO.  Although CITGO has independently demanded payment from Defendants under both of the relevant agreements, neither defendant has fulfilled its payment obligations to CITGO, which are now significantly past due.

10.     CITGO is a refiner and marketer of petroleum products with origins dating back to 1910. Over the years, CITGO has earned the trust and goodwill of generations of Americans by producing and marketing high quality petroleum products. As such, CITGO possesses a decidedly strong and loyal customer base who has become accustomed to obtaining a certain level of service and quality of product from locations displaying CITGO signs and logos.

11.     CITGO markets its gasoline and diesel fuel ("Motor Fuels") in many parts of the United States. CITGO's primary means of marketing Motor Fuels is through independent wholesale distributors (also known as marketers) who purchase Motor Fuels from CITGO and resell the products to independent service station dealers and convenience store operators. The wholesale distributors are authorized by CITGO to market Motor Fuels under CITGO's trademarks, trade names and other brand identifications and to authorize their retail-dealer

customers to sell Motor Fuels under the CITGO brand. CITGO expects its marketers (like Daibes Oil) to appreciate their customers' expectations and to recognize the standards of quality associated with CITGO and its products, and to similarly value CITGO's brand, marks, and protected images with which they have been entrusted.

12.     To ensure the uniformity of its logo and other protected marks, CITGO often provides its marketers with CITGO branding material to display at the retail locations to which the marketers supply CITGO Motor Fuels.  The costs associated with such branding materials, including any installation costs paid by CITGO, are amortized over a sixty (60) month period on a straight-line basis.  Should any of the retail locations to which a marketer has distributed CITGO's brand identification items debrand within the sixty-month amortization period, the marketer must reimburse CITGO the unamortized portion of those costs.

13.     Pursuant to the terms of a certain Marketer Franchise Agreement between CITGO and Daibes Oil, Daibes Oil is one of CITGO's marketers in northern New Jersey.  Daibes Oil has failed to fulfill its payment obligations under this agreement by failing to remit full payment to CITGO for certain fuel purchases made in January 2014.  Daibes Oil has also failed to reimburse CITGO for the costs associated with branding materials furnished by CITGO to certain service stations supplied with CITGO Motor Fuels by Daibes Oil that were debranded within the sixty-month amortization period described above.  Despite demand for payment, Daibes Oil has failed to fulfill its payment obligations to CITGO under the Marketer Franchise Agreement and is, thus, in breach of that contract.  CITGO tendered Daibes Oil's indebtedness to Daibes pursuant to the Guaranty, but he, too, has failed to fulfill his payment obligations under that agreement and is in breach of that contract.

\\DE - 032041/000115 - 741652 v2

14.     CITGO also recently learned that Daibes Oil has sold and continues to sell non-branded motor fuels from service stations displaying CITGO's trademark, trade dress, and other protected images.  Daibes Oil's sale of non-branded fuel from CITGO-branded service stations not only violates the Marketer Franchise Agreement, but also violates the Lanham Act.

15.     Because of Defendants' repeated and intentional disregard of their legal and contractual obligations, CITGO has been forced to seek redress from this Court.

## A.  The Marketer Franchise Agreement

16.     On February 16, 2012, CITGO and Daibes Oil executed a "Marketer Franchise Agreement," in which Daibes Oil agreed to purchase and lift specified quantities of Motor Fuels from CITGO, and CITGO agreed to sell and deliver the Motor Fuels to Daibes Oil, for resale by Daibes Oil under CITGO's brand name, trade dress, and trademarks to consumers and retailers. *See* Marketer Franchise Agreement ("MFA") § 2.  Such fuel liftings were to occur monthly and in the quantities set forth in the MFA.  *See id.*

17.     The MFA became effective on February 1, 2012, and is scheduled to expire on January 31, 2015, but automatically renews for successive three-year periods unless validly terminated or not renewed. *Id.* at § 1.

18.     Daibes Oil agreed to pay CITGO for the Motor Fuels lifted by the date set forth on each invoice and in accordance with the terms prescribed by CITGO's Credit Department, which, at the time the MFA was executed, were "one percent (1%) Electronic Funds Transfer (EFT) ten (10) days." *See id.* at § 5(a).

19.     The MFA authorized CITGO "to audit all delivery, inventory and sales records of [Daibes Oil]. . ." *Id.* at § 5(c).  The MFA also obligated Daibes Oil to accept CITGO Payment Cards, *id.* at § 12(a), and granted CITGO a "security interest in all Payment Card invoices and

proceeds from such Payment Card invoices to secure the payment of Motor Fuel(s) purchases from CITGO." *Id.* at § 5(e).  The MFA further authorized CITGO "to apply the proceeds of Payment Card invoices or any other credits which may be owing to [Daibes Oil] toward the payment of any indebtedness owed by [Daibes Oil] to CITGO." *Id.* at §§ 5(e), 12(c).

20.     In the event of late payments by Daibes Oil, the MFA authorizes CITGO to assess "finance charges in an amount equal to the lesser of (i) the maximum amount allowed by applicable law or (ii) one and one-half percent (1.5%) per month." *Id.* at § 5(a).  The MFA further authorizes CITGO to restrict Daibes Oil's credit, deny it access to CITGO's fuel terminals, and withhold from it any rebates, discounts or benefits from CITGO programs in which it may otherwise participate.  *Id.* at § 5(a).  Daibes Oil's failure to pay invoices timely also constitutes grounds for the MFA's termination and/or non-renewal by CITGO.  *Id.*

21.     Upon CITGO's request, Daibes Oil must furnish CITGO with "security agreements, financing statements, personal guaranties, letters of credit, or other collateral in forms and amounts that may be requested by CITGO." *Id.* at § 5(b).

22.     The MFA grants Daibes Oil the right to use CITGO's brand names, trademarks and other forms of CITGO identification in connection with the resale of CITGO Motor Fuels to retailers and consumers. MFA §6. To ensure the branding materials displayed at CITGO-branded service stations are uniform, CITGO furnishes its marketers with certain CITGO brand identification items ("Branding Materials") for use at the CITGO-branded retail locations to which the marketer supplies CITGO Motor Fuels for resale to consumers ("Locations").  These Branding Materials include items bearing CITGO's brand names, trademarks and other forms of CITGO identification.   Such Branding Materials are a valuable asset to CITGO and the components thereof are registered trademarks protected under federal law.

23.     All CITGO Branding Materials furnished by CITGO to any Location, including any installation costs paid by CITGO, "shall be amortized over a sixty (60) month period on a straight-line basis."  *Id.* at 6(j).  "Should any such Location be debranded within the sixty (60) month amortization period, [the Location's] Marketer shall pay to CITGO the unamortized portion of the costs associated with the CITGO Branding Material as of the date of debranding." *Id.*

24.     The MFA requires Daibes Oil to market CITGO Motor Fuels from the service stations branded as CITGO pursuant to its authority under the MFA and prohibits Daibes Oil from using CITGO's Branding Materials in connection with the sale of non-branded fuel or Motor Fuels that were not obtained from CITGO under the MFA. MFA at §6(b). As such, the MFA requires Daibes Oil to identify and label any non-CITGO Motor Fuels it sells as non-CITGO products in order to make it unmistakably clear to consumers that such Motor Fuels are not CITGO Motor Fuels. MFA at §6(c).

25.     Texas law expressly governs the MFA, whose terms, the parties agreed, "were negotiated and are to be performed, at least in part, in Harris County, Texas." *Id.* at § 20(a). CITGO and Daibes Oil further acknowledged that "Texas is a convenient and reasonable forum" for the resolution of any disputes relating to or arising out of the MFA, which the parties agreed shall be exclusively resolved in the United States District Court for the Southern District of Texas, Houston Division.  *Id.*   As such, CITGO and Daibes Oil "irrevocably submit[ted] themselves to the jurisdiction of the United States District Court for the Southern District of Texas, Houston Division" and waived "all questions of personal jurisdiction for the purposes of carrying out this Subsection." *Id.*

\\DE - 032041/000115 - 741652 v2

26.     Moreover, the parties expressly waived their rights to a jury trial on any claim based upon, relating to or arising out of the MFA. *Id.* at § 21.

27.     The MFA further provides that Daibes Oil "shall pay, in addition to all other amounts payable, the actual expenditures of CITGO, including attorneys' fees, for legal process or proceeding to enforce any rights or obligations" of the MFA.  *Id.* at § 22(e).

## B.  **The Guaranty**

28.     In furtherance of the MFA, and pursuant to its contractual right to request "security agreements, financing statements, personal guaranties, letters of credit, or other collateral in forms and amounts that may be requested by CITGO," CITGO demanded additional security from Daibes Oil in the form of a personal guaranty from one of its members, Fred Daibes. *Id.* at § 5(b). Consequently, on November 21, 2013, Daibes executed a guaranty agreement ("Guaranty") in favor of CITGO.

29.     The Guaranty became effective on November 21, 2013 for a period of seven years and obligates Daibes to unconditionally guarantee Daibes Oil's payment obligations to CITGO:

> [Daibes] hereby unconditionally guarantees the payment when due of all of [Daibes Oil]'s indebtedness now or hereafter owed to CITGO, as provided herein. The term "Indebtedness" shall include every payment obligation which [Daibes Oil] has or may have to CITGO; regardless of the form thereof and whenever due; whether joint or several; and whether or not barred at any time by any statute of limitations; all in the broadest sense. [Daibes]'s liability under this guaranty is limited to $500,000.00.

Guaranty § 1.

30.     Daibes' obligations under the Guaranty are broad.  Daibes waived "notice of acceptance of this Guaranty, presentment, demand, protest, notice of dishonor, any right to require CITGO to commence suit against any party liable on the indebtedness, and any defense based upon any election of remedies by CITGO," *id.* at § 3, and further waived "notice of new or

9

additional obligations of [Daibes Oil] to CITGO, and the benefit of any statute of limitations affecting (i) [Daibes'] obligations and their enforcement, or (ii) CITGO's rights of recovery." *Id.*

31. Indeed, Daibes expressly agreed that CITGO could, among other things, do one or more of the following without notice or consent:

 a) Renew, compromise, extend, accelerate, or otherwise change the terms of any of the indebtedness;
 b) Take and hold security for all or part of the indebtedness or for the performance of the Guaranty, and exchange, enforce, waive, and release any security;
 c) Proceed directly against Daibes, without first proceeding against Daibes Oil or any other person or against any other security CITGO may have.

*Id.* at § 4.

32. Under the terms of the Guaranty, Daibes agreed to remain "informed of [Daibes Oil]'s financial condition, and of all other circumstances bearing upon the risk of nonpayment of the indebtedness, which diligent inquiry would reveal." *Id.* at § 8.

33. CITGO and Daibes agreed that the Guaranty "shall be governed and construed by and in accordance with the laws of the State of Texas." *Id.* at § 12.

34. The Guaranty further provides, "If CITGO enforces this Guaranty, CITGO shall be entitled to reasonable attorneys' fees and costs, plus interest thereon, and on the indebtedness, from due date until paid, at the rate of ten percent (10%) per annum or the maximum rate permitted by law, whichever is less." *Id.*

35. Daibes provided a financial statement and credit application in connection with the Guaranty, which CITGO relied upon in accepting the Guaranty from Daibes and extending credit to Daibes Oil under the MFA. *Id.* at § 7.

\\DE - 032041/000115 - 741652 v2

## C. **Daibes Oil Failed to Pay Invoices under the MFA**

36.    Beginning shortly after the execution of the MFA, Daibes Oil began purchasing Motor Fuels from CITGO.

37.    These purchases were made by Daibes Oil "lifting" Motor Fuels from CITGO's fuel terminals and paying for those purchases through subsequently-executed electronic funds transfers drafted from Daibes Oil's bank account.  Many of these liftings were authorized by CITGO in reliance upon Daibes Oil's credit and the Guaranty.

38.    CITGO issued invoices to Daibes Oil for the Motor Fuels purchased, which Daibes Oil was obligated to fund within 10 days.  MFA § 5(a); *see also* Invoices dated January 8, 2014 through January 15, 2014.

39.    In January 2014, Daibes Oil lifted significant quantities of Motor Fuels from CITGO's terminal in Linden, New Jersey for resale to consumers at CITGO-branded service stations supplied with Motor Fuels by Daibes Oil.  When CITGO attempted to execute the electronic funds transfers from Daibes Oil's bank account to pay for these purchases, several of the transfers were not honored by Daibes Oil's bank due to insufficient funds.  Although Daibes Oil wired a small fraction of the overall debt to CITGO on or about January 30, 2014, it has failed to remit full payment to CITGO for these purchases and has made no further attempts to reconcile its debt to CITGO.

40.    CITGO contacted Daibes Oil and demanded payment for all unpaid quantities of fuel lifted by Daibes Oil.  On March 4, 2014, counsel for Daibes Oil responded by requesting additional time to allow Daibes Oil to assess its cash flow issues and collect certain unresolved third-party debts.  CITGO has heard nothing from Daibes Oil since that date.

\\DE - 032041/000115 - 741652 v2

41.     As of October 1, 2014, the sum of $359,343.09 was due and owing from Daibes Oil to CITGO for these fuel purchases, exclusive of the permitted service charge, attorneys' fees, costs, expenses, or other chargeable amounts for which Daibes Oil is responsible. CITGO's damages are increasing daily.

42.     CITGO has demanded payment from Daibes Oil for sums due and owing to CITGO.  In violation of its contractual obligations under the MFA, Daibes Oil has failed to remit payment to CITGO.

### D.  Daibes Oil Failed to Pay for Branding Materials

43.     CITGO furnished Daibes Oil with certain Branding Materials for display at CITGO-branded retail locations to which Daibes Oil supplied CITGO Motor Fuels for resale to consumers.  The costs of such Branding Materials are amortized over a sixty-month period on a straight-line basis; Daibes Oil must reimburse CITGO the unamortized costs associated with the CITGO Branding Material for any Location debranded within the amortization period.  MFA § 6(j).

44.     As a result of Daibes Oil's failure to remit full payment for its fuel purchases and its violations of the Lanham Act (described more fully below), CITGO notified Daibes Oil on October 1, 2014 of its termination of the MFA (effective October 15, 2014) and its immediate debranding of the Locations to which Daibes Oil supplied CITGO Motor Fuels for resale (i.e., Stewartsville Service Center, Lakewood CITGO, and North Brunswick Auto) (collectively, "Daibes Stations"). As of October 1, 2014, the date of debranding, the unamortized balance for the Branding Materials for these three Locations was $58,852.20. The MFA obligates Daibes Oil to pay this sum to CITGO. MFA § 6(j).

45. CITGO has demanded payment from Daibes Oil for sums due and owing, including those arising from CITGO's furnishing of such Branding Materials to the Daibes Stations, which became due on October 1, 2014, the date of their debranding by CITGO. Daibes Oil has failed to remit payment to CITGO.

E. **Daibes Oil Sold Non-CITGO Branded Motor Fuels under CITGO's Trademark and Branding Materials**

46. The Branding Materials contain registered trademarks that belong to CITGO, including the iconic CITGO logo, which features a trimark and the stylized logo type "CITGO." *See* U.S. Trademark Registration Nos. 0844353 and 0836105 on the Principal Register. Symbolizing power, energy, and progressiveness, CITGO's iconic trimark has been in use by CITGO continuously since 1965 and has, for many, become a symbol of comfort, inspiration, and pride.[1] Since then, CITGO has expended substantial amounts of money to promote its name and establish its trademarks in the competitive market for petroleum products. These trademarks are valuable assets and are represented in physical form in the Branding Materials and various other indicia of CITGO's brand. CITGO's trademarks represent to consumers that the Motor Fuels sold from Locations displaying the trademarks meet CITGO's high standards for quality and that the Locations may be relied upon to provide the quality of product that consumers have come to expect from CITGO.

47. CITGO communicates its expectations regarding its image and the proper use of its protected marks to its marketers in the MFA. *See, e.g.,* MFA at §6. In the MFA, Daibes Oil agreed to "not allow nor permit the use of CITGO's brand names, trademarks, trade dress, and all other forms of CITGO identification" in connection with the resale of Motor Fuels that were

---

[1] In but one example, CITGO's signage in Kenmore Square has been part of Boston's skyline since 1940 and is held in particularly high regard by Boston sports fans and baseball fans across the globe. *See The CITGO Sign in Boston's Kenmore Square*, https://www.citgo.com/AboutCITGO/BostonSign.jsp.

\\DE - 032041/000115 - 741652 v2

not purchased from CITGO under the MFA. MFA at §6(b). In addition, the MFA required Daibes Oil to clearly identify and label any non-CITGO Motor Fuels "in print at least comparable in size to CITGO's brand names, trademarks, trade dress, and other forms of CITGO identification in order to make it unmistakably clear that such Motor Fuels are not CITGO Motor Fuels." MFA at §6(c). Despite these contractual obligations, Daibes Oil has sold non-CITGO-branded Motor Fuels from certain Locations while displaying CITGO's trademarks and Branding Materials, and is now even refusing to accept CITGO Payment Cards. *Id.* at §12. As such, Daibes Oil has violated these provisions of the MFA and is therefore in breach of that contract.

48.     Federal law also prohibits Daibes Oil from using CITGO's trademarks to sell non-CITGO Motor Fuels. Section 32 of the Lanham Act prohibits the use in commerce of a registered mark in connection with the sale of any goods without the consent of that mark's registrant. *See* 15 U.S.C. § 1114. As evidenced by the MFA, CITGO has not consented to the sale of unbranded Motor Fuels while displaying CITGO Branding Materials. *See* MFA at §6(b). Moreover, Daibes Oil's sale of non-CITGO Motor Fuels while displaying CITGO's trademark violates Section 43(a) of the Lanham Act, which prohibits the false designation of the origins of goods or services. *See* 15 U.S.C. § 1125. By selling inferior, non-CITGO Motor Fuels under CITGO's Branding Materials, Daibes Oil is appropriating CITGO's goodwill and harming CITGO's standing within the local market.

### F.     <u>Daibes Refuses to Fulfill his Obligations under the Guaranty</u>

49.     The Guaranty obligates Daibes to remain "informed of Debtor's financial condition, and of all other circumstances bearing upon the risk of nonpayment of the indebtedness, which diligent inquiry would reveal." Guaranty § 8.   Daibes Oil is currently

indebted to CITGO in the amount of $418,195.29, exclusive of interest and reimbursable costs, for the unpaid fuel purchases and costs associated with the unamortized Branding Materials. Daibes may also be responsible for damages relating to Daibes Oil's violations of the Lanham Act.   Pursuant to its rights under the Guaranty, CITGO tendered Daibes Oil's outstanding indebtedness to Daibes on October 1, 2014.  *Id.* § 1.  Although payment for such indebtedness was due immediately upon demand, *id.* at §§ 3, 4, Daibes has failed to remit payment to CITGO and has, thus, failed to fulfill his contractual obligations under the Guaranty.

50.     Despite demand, Defendants have failed to pay CITGO all sums due and owing.

### IV.     CLAIMS AND CAUSES OF ACTION

#### 1.     First Cause of Action: Breach of Contract against Daibes Oil for Failure to Remit Payment for Fuel Purchases

51.     CITGO hereby incorporates paragraphs 1 through 50 as though fully set forth herein.

52.     The MFA is a valid contract, and is enforceable by and binding upon Daibes Oil and CITGO.

53.     Under the terms of the MFA, Daibes Oil agreed to purchase and lift specified quantities of Motor Fuels, and CITGO agreed to sell and deliver such Motor Fuels to Daibes Oil. MFA § 2. Daibes Oil agreed to pay CITGO for the Motor Fuels in accordance with the terms prescribed by CITGO's Credit Department and by the date set forth on each invoice.  *See id.* at § 5(a).

54.     CITGO has fully performed its obligations as required by the MFA.

55.     Daibes Oil lifted Motor Fuels from CITGO's terminal, but has failed to remit full payment to CITGO.  Despite demand, Daibes Oil has failed to fulfill its payment obligations to

CITGO for certain Motor Fuels purchases made by Daibes Oil in January 2014.  Daibes Oil's failure to perform is not excused by any reason.

56.     Daibes Oil's failure to pay the amounts due and owing to CITGO constitutes a breach of contract.  CITGO has sustained damages because of Daibes Oil's breach and is therefore entitled to recover monetary damages, as well as attorneys' fees, interest, and costs.

### 2.  Second Cause of Action: Breach of Contract against Daibes Oil for Failure to Remit Payment for Unamortized Branding Materials

57.     CITGO hereby incorporates paragraphs 1 through 50 as though fully set forth herein.

58.     The MFA is a valid contract, and is enforceable by and binding upon Daibes Oil and CITGO.

59.     Under the terms of the Marketer Franchise Agreement between CITGO and Daibes Oil, CITGO may furnish certain Branding Materials to Daibes Oil for display at CITGO-branded retail locations to which Daibes Oil supplies CITGO Motor Fuels.  The MFA further provides that the costs associated with these Branding Materials, including any installation costs paid by CITGO, shall be amortized over a sixty-month period on a straight-line basis.  Daibes Oil must pay CITGO the unamortized portion of such costs should any of the Locations debrand within the amortization period.  *Id.* at § 6(j).

60.     CITGO furnished such Branding Materials to Daibes Oil for distribution to the following CITGO-branded Locations: Stewartsville Service Center, Lakewood CITGO, and North Brunswick Auto.  As a result of Daibes Oil's aforementioned failure to remit payment to CITGO for certain purchases of Motor Fuels in January 2014, as well as other contractual and legal violations by Daibes Oil, CITGO debranded these Locations on October 1, 2014.  As of

that date, the unamortized balance for the Branding Materials distributed to these Locations was $58,852.20. Daibes Oil is contractually obligated to pay this sum to CITGO.  MFA § 6(j).

61.     CITGO has fully performed its obligations as required by the MFA.  Despite demand, Daibes Oil has failed to remit payment to CITGO for the Branding Materials furnished by CITGO for distribution to the three debranded Locations. Daibes Oil's failure to perform is not excused by any reason.

62.     Daibes Oil's failure to pay the amounts due and owing to CITGO constitutes a breach of contract. CITGO has sustained damages because of Daibes Oil's breach and is therefore entitled to recover monetary damages, as well as attorneys' fees, interest, and costs.

### 3.   Third Cause of Action: Breach of Contract against Daibes Oil for Selling non-CITGO Motor Fuels Using CITGO Branding Materials

63.     CITGO hereby incorporates paragraphs 1 through 50 as though fully set forth herein.

64.     The MFA prohibits Daibes Oil from using CITGO's Branding Materials in connection with the sale of Motor Fuels that were not obtained from CITGO under the MFA. MFA at §6(b). The MFA also requires Daibes Oil to identify and label any non-CITGO Motor Fuels it sells in order to make it unmistakably clear to consumers that such Motor Fuels are not CITGO Motor Fuels. MFA at §6(c).

65.     Upon information and belief, Daibes Oil has sold non-CITGO Motor Fuels under CITGO's trademarked Branding Materials to consumers. Furthermore, Daibes Oil has failed to clearly label non-CITGO Motor Fuels that it sold as required by the MFA.

66.     Daibes Oil's sale of non-CITGO Motor Fuels from locations displaying CITGO's Branding Materials constitutes a breach of contract. Daibes Oil's failure to lift CITGO Motor Fuels coupled with its sale of non-CITGO fuel from CITGO-branded service stations has

deprived CITGO of revenue it would have otherwise received. CITGO has sustained damages because of Daibes Oil's breach and is therefore entitled to recover monetary damages, as well as attorneys' fees, interest, and costs.

**4.   Fourth Cause of Action: Trademark Infringement under the Lanham Act**

67.   CITGO hereby incorporates paragraphs 1 through 50 as though fully set forth herein.

68.   CITGO owns U.S. Trademark Registration Nos. 0844353 and 0836105 on the Principal Register for the CITGO Logo. These trademarks are incorporated in the Branding Materials and are valuable assets which identify the products sold under their display as conforming to the standards of quality for which CITGO has become synonymous and CITGO's customers have come to expect. CITGO has invested and continues to invest substantial sums of money promoting its products and services offered under these trademarks, which are instantly recognizable and sought out by CITGO's loyal customers.

69.   Upon information and belief, Daibes Oil has sold non-CITGO Motor Fuels under CITGO's trademarked Branding Materials to consumers.  CITGO did not authorize Daibes Oil to use trademarked CITGO Branding Materials to sell non-CITGO Motor Fuels and, in fact, specifically prohibited Daibes Oil from such conduct in the MFA.  As such, Daibes Oil's infringement and misappropriation of CITGO's trademarked and protected images were willful, knowing and intentional.

70.   Daibes Oil's unauthorized use of CITGO's trademarks in the Branding Materials in connection with its sale of non-CITGO Motor Fuels is likely to cause confusion, to cause mistake, or to deceive customers and potential customers of the parties by suggesting that the Motor Fuels were produced, marketed or sold by CITGO.  Moreover, by selling non-CITGO

Motor Fuels under CITGO trademarks, Daibes Oil is also misrepresenting the quality and characteristics of the fuel to consumers. The non-branded fuel sold by Daibes Oil at CITGO-branded locations is likely of inferior quality and the sale of such products from locations displaying CITGO Branding Material has therefore injured CITGO's reputation for high quality goods.

71.     The aforesaid acts of Daibes Oil are likely to cause consumers to believe that the sale of such fuel is authorized, sponsored or approved by CITGO and that such products are subject to the same quality control and regulation required by CITGO, which is not accurate.

72.     Daibes Oil's actions, as described above, constitute multiple violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). The aforesaid distribution and sale of non-branded fuel bearing the trademarks, service marks, likenesses, logos and other indicia of CITGO constitutes a false designation of the source of origin of such goods and falsely describes and represents such products. *See* 15 U.S.C. § 1125(a). In addition, Daibes Oil's use of CITGO's trademarks without the consent of CITGO in connection with the sale of unbranded gasoline constitutes an infringement of CITGO's valuable trademarks. *See* 15 U.S.C. § 1114.

73.     CITGO has been injured by Daibes Oil's conduct.  Not only has Daibes Oil likely harmed CITGO's image and goodwill amongst consumers, but CITGO has lost revenue as a result of Daibes Oil's sale of non-CITGO Motor Fuels from these Locations and its concomitant failure to lift and purchase CITGO Motor Fuels from CITGO.  CITGO is, thus, entitled to all damages resulting from Daibes Oil's conduct, including but not limited to actual damages, infringing profits, statutory damages, costs, attorneys' fees, and other relief provided under the Lanham Act.

\\DE - 032041/000115 - 741652 v2

### 5.   Fifth Cause of Action: Breach of the Guaranty against Daibes

74.     CITGO hereby incorporates paragraphs 1 through 50 as though fully set forth herein.

75.     The MFA obligates Daibes Oil to furnish a personal guaranty at CITGO's request. MFA § 5(b). Pursuant to this obligation, Daibes executed the Guaranty for Daibes Oil's indebtedness in favor of CITGO.  CITGO relied upon the Guaranty in extending credit to Daibes Oil for Motor Fuels purchases under the MFA.

76.     The Guaranty is a valid contract, and is enforceable by and binding upon Daibes and CITGO.

77.     Under the terms of the Guaranty, Daibes unconditionally guaranteed the payment when due of all of Daibes Oil's indebtedness to CITGO. Guaranty § 1.

78.     Daibes Oil has failed to fulfill its payment obligations to CITGO as required by the MFA and the invoices.  Daibes Oil is currently indebted to CITGO in the amount of $418,195.29, exclusive of interest and reimbursable costs, for unpaid fuel purchases and unamortized costs associated with CITGO Branding Materials furnished by CITGO.  Daibes Oil may also be responsible for damages relating to its violations of the Lanham Act.

79.     Pursuant to its rights under the Guaranty, CITGO tendered Daibes Oil's outstanding indebtedness to Daibes on October 1, 2014.  Despite demand, Daibes has failed to make, or cause to be made, the payments due and owing to CITGO as required by the Guaranty.

80.     The failure of Daibes to make, or cause to be made, all payments due and owing to CITGO by Daibes Oil constitutes a breach of the Guaranty. CITGO has sustained damages because of Daibes' breach and is therefore entitled to recover monetary damages, as well as attorneys' fees, interest, and costs.

## PRAYER

For the above reasons, Plaintiff asks that the Defendants be cited and made to appear herein and answer the above allegations, and that judgment be rendered in favor of Plaintiff as follows:

a) A judgment that Daibes Oil breached its obligations under the Marketer Franchise Agreement by failing to remit payment for fuel purchases and is accordingly liable to CITGO for all lawful monetary damages;

b) A judgment that Daibes Oil breached its obligations under the Marketer Franchise Agreement by failing to remit payment for unamortized branding materials and is accordingly liable to CITGO for all lawful monetary damages;

c) A judgment that Daibes Oil breached its obligations under the Marketer Franchise Agreement by selling non-CITGO Motor Fuels under CITGO's Branding Materials and is accordingly liable to CITGO for all lawful monetary damages;

d) A judgment that Daibes Oil infringed CITGO's trademarks incorporated in the Branding Materials by selling non-CITGO Motor Fuels under CITGO's Branding Materials and is accordingly liable to CITGO for all lawful monetary damages, including Daibes Oil's profits resulting from its infringement;

e) A judgment that Daibes breached his obligations under the Guaranty and is accordingly liable to CITGO for all lawful monetary damages;

f) Reasonable attorneys' fees;

21

g) Costs of suit;

h) Pre- and post-judgment interest; and

i) Such other and further relief to which CITGO may show itself to be justly entitled.

Respectfully submitted,

By: _____ /s/ Aaron R. Crane _____

    Aaron R. Crane
    Attorney-in-Charge
    Texas SBN 24050459
    Southern District ID No. 619093
    Of Counsel:
    Robert L. Pillow
    Texas SBN 24080315
    Southern District ID No. 2258484
    **HOGAN LOVELLS US, L.L.P.**
    700 Louisiana, Suite 4300
    Houston, Texas  77002
    T (713) 632-1400
    D (713) 632-1446
    F (713) 632- 1401

    **Counsel for CITGO Petroleum Corporation**